**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | |
|---|---|
| Sean O.,[1]<br><br>Plaintiff,<br><br>vs.<br><br>FRANK BISIGNANO, Commissioner of Social Security,<br><br>Defendant. | No. 25-CV-3045-CJW-KEM<br><br>**ORDER** |

## *I. INTRODUCTION*

A Report & Recommendation ("R&R") by the Honorable Kelly K. E. Mahoney, Chief United States Magistrate Judge, recommending the Court affirm the decision of the Administrative Law Judge ("ALJ") denying Sean O.'s ("claimant") application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), Title 42, United States Code, Sections 401–34 is before the Court. (Doc. 15). Claimant filed an objection. (Doc. 16). The Commissioner of Social Security ("Commissioner") filed a response. (Doc. 17). For the following reasons, the Court **overrules** claimant's objection, **adopts** Chief Judge Mahoney's R&R, and **affirms** the ALJ's decision denying DIB.

## *II. BACKGROUND, STANDARDS, AND THE ALJ'S FINDINGS*

The Court finds that Chief Judge Mahoney accurately set out the background, disability determinations and burden of proof, the ALJ's findings, and the substantial

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

evidence standard, (Doc. 15, at 1–5), and claimant does not object to any portion of it. Thus, the Court adopts those portions of the R&R and incorporates them by reference without replicating them here.

The key background information as summarized by Chief Judge Mahoney is that "[claimant] alleged disability based on bipolar disorder, substance abuse in remission, deep vein thrombosis, right shoulder rotator cuff tear, migraines, lumbar arthritis, depression, anxiety, post-traumatic stress disorder (PTSD), and left knee pain post-knee replacement. The Social Security Administration denied [claimant]'s request for benefits on initial review in November 2023 and on reconsideration in January 2024." (Doc. 15, at 2–3). "[Claimant] requested further review." (*Id.*, at 3). "The ALJ held a hearing in July 2024, at which [claimant] and a vocational expert (VE)[2] testified." (*Id.*). On August 9, 2024, the ALJ issued his decision, finding that "claimant has not been under a disability within the meaning of the Social Security Act from June 2, 2022, through the date of this decision." (Doc. 7-2, at 14, 26). In reaching his decision, the ALJ stated that he found the testimony of Shelby Allen-Benitz, ARNP, unpersuasive, as it was not supported by her treatment notes and contradicted other medical evidence in the record. (*Id.*, at 23). On June 18, 2025, the Appeals Council denied claimant's request for review. (Doc. 7-2, at 2–4).

On August 14, 2025, claimant filed a complaint before this Court. (Doc. 4). On September 29, 2025, the Commissioner filed an answer and provided the administrative record. (Docs. 7 through 7-34). On November 14, 2025, claimant filed his brief. (Doc. 11). On December 10, 2025, the Commissioner filed his response. (Doc. 12). On December 23, 2025, claimant filed a reply. (Doc. 13). On August 17, 2026, Chief Judge Mahoney issued her R&R, recommending that the Court affirm the ALJ's decision

[2] Melinda Stahr. *See* (Doc. 7-2, at 35).

denying DIB. (Doc. 15). On August 31, 2026, claimant filed an objection to the R&R. (Doc. 16). On September 1, 2026, the Commissioner filed a response. (Doc. 17).

### *III. STANDARD OF REVIEW OF AN R&R*

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a clearly erroneous standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). A district judge may, however, elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude

> further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985).

## *IV. THE R&R*

In his brief before Chief Judge Mahoney, claimant argued that (1) the ALJ's finding that Ms. Allen-Benitz's opinions were unpersuasive was not supported by substantial evidence, and (2) the ALJ did not provide good reasons for finding claimant not credible in reporting his limitations. (Doc. 11, at 1–2). More specifically, claimant argues "[t]he ALJ's errors evaluating Ms. Allen-[Benitz's] opinion were harmful, as the limitations she opined to were disabling." (*Id.*, at 19). Regarding claimant's self-reported limitations, "his limited activities did not show an ability to deal with the stress of full-time competitive work without excessive absences or off-task or slow-paced time. The ALJ's failure to evaluate daily activities and [claimant's] physical and mental limitations fully and fairly warrants remand." (*Id.*, at 23). Claimant asserts that those "errors, individually or taken together, require this Court to reverse the ALJ's denial of benefits and remand [claimant]'s claim." (*Id.*, at 3).

The Commissioner responded, "The ALJ applied the correct legal standards and identified substantial evidence in support of his findings." (Doc. 12, at 2). In addition, the Commissioner argued that "[s]ubstantial evidence supports the ALJ's decision." (*Id.*). More specifically, "[t]he ALJ decision makes plain that the ALJ considered all relevant evidence, including the narrative letter provided by ARNP Allen-Benitz explaining the basis for her opinions, but reasonably found that the evidence was not supportive of or consistent with the limitations ARNP Allen-Benitz assessed." (*Id.*, at 14). In addition, claimant "did not allege that he could not perform the cumulative standing and/or walking required of light work." (*Id.*, at 18). "Nothing more was required to determine [claimant]'s disability claim." (*Id.*, at 20).

In her R&R, Chief Judge Mahoney recommended affirming the ALJ's decision. (Doc. 15, at 1). Specifically, she stated, "I recommend finding that the ALJ adequately articulated the supportability of NP Allen-Benitz's medical opinion by discussing 'the objective medical evidence' underlying NP-Benitz's opinion, rather than the 'supporting explanations presented by' NP Allen-Benitz." (*Id.*, at 10). Likewise, on the subjective complaints issue, Chief Judge Mahoney noted that claimant "did not complain about standing limitations in his June 2023 function report, and he worked a job throughout the relevant time period that required standing for five-hour shifts. In addition, when asked why he could not work full time, he did not point to standing issues." (*Id.*, at 16). She then stated, "I recommend finding that substantial evidence supports the ALJ's evaluation of [claimant's] subjective complaints." (*Id.*, at 18).

## *V. DISCUSSION*

Claimant now asserts that Chief Judge Mahoney committed reversible error in her handling of his two arguments. The Court considers each de novo and in turn.

### *A. The ALJ Finding ARNP Allen-Benitz's Opinion Unpersuasive*

Under the regulations, an ALJ must "evaluate the persuasiveness of medical opinions by considering (1) whether they are supported by objective medical evidence, (2) whether they are consistent with other medical sources, (3) the relationship that the source has with the claimant, (4) the source's specialization, and (5) any other relevant factors." *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)). Likewise, an ALJ's failure to specifically address the consistency and supportability of any medical opinion is reversible error. *See Bonnett v. Kijakazi*, 859 Fed. App'x 19, 20 (8th Cir. 2021). Regarding supportability, specifically, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative

medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). The Eighth Circuit has found that an ALJ did not err in evaluating a medical opinion's supportability by discussing "treatment notes in detail" and how they were inconsistent. *Cropper v. Dudek*, 136 F.4th 809, 815 (8th Cir. 2025).

An ALJ is not, however, required to specifically address each statement made or limitations referenced in an opinion. *See McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011) (stating that an ALJ is not required to "mechanically list and reject every possible limitation"); *accord Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) ("The interpretation of physicians' findings is a factual matter left to the ALJ's authority."). Rather, "the ALJ is free to accept some, but not all, of a medical opinion." *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022). At the same time, an ALJ may not "play doctor" by making their own medical determinations on how symptoms should manifest or what diagnoses signify. *Pate-Fires v. Astrue*, 564 F.3d 935, 946–47 (8th Cir. 2009). Put another way, "an ALJ must not substitute his opinions for those of the physician." *Finch v. Astrue*, 547 F.3d 933, 938 (8th Cir. 2008).

In her medical source statement, ARNP Allen-Benitz stated that "[d]istress tolerance has historically been problematic for" claimant and that it had led to "absence from previous jobs requiring FMLA paperwork completion by this writer on multiple occasions." (Doc. 7-26, at 83). Overall, ARNP Allen-Benitz stated that "work is a significant source of stress" for claimant. (*Id.*). She predicted that claimant's impairments would cause him to be absent from work more than four days per month for at least twelve months. (*Id.*, at 85). She also provided supplemental medical conclusions, and in that statement, explained:

> In my opinion, to a reasonable degree of mental health certainty, based on my treatment of [claimant], and with an understanding of Social Security definitions, [claimant] is unable to meet competitive standards regarding his ability to maintain regular attendance and be punctual within customarily strict tolerances, sustain an ordinary routine without special

> supervision, work in coordination with or in proximity to others without being unduly distracted, perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, understand, remember and carry out detailed instructions, set realistic goals or make plans independently of others, deal with the stress of unskilled, semiskilled, or skilled work, maintain socially appropriate behavior, and travel to an unfamiliar place.
>
> Similarly, [claimant] is seriously limited regarding his ability to remember work-like procedures, understand and remember very short and simple instructions, maintain attention for 2-hour segments, make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically based symptoms, ask simple questions or request assistance, get along with co-coworkers or peers without unduly distracting them or exhibiting behavioral extremes, respond appropriately to changes in a routine work setting, interact appropriately with the general public, adhere to basic standards of neatness and cleanliness, and use public transportation.

(Doc. 7-32, at 71–72).

ARNP Allen-Benitz's treatment notes paint a different, much less dire picture. In her treatment notes, ARNP Allen-Benitz stated that claimant was "time oriented, place oriented, person oriented and purpose oriented," that he was cooperative, that his thought processes were "logical and goal oriented," his "[r]ecent memory status is good" and "[r]emote memory status is good," that his intelligence was average, and that his judgment, insight, and impulse control were fair. (Doc. 7-30, at 87). She added that claimant "[p]uts on a good front, but in reality does not function well." (*Id.*). In additional treatment notes from a return visit, ARNP Allen-Benitz wrote the same—that claimant was "time oriented, place oriented, person oriented and purpose oriented," he was cooperative, his thought processes were "logical and goal oriented," his "[r]ecent memory status is good" and "[r]emote memory status is good," his intelligence was average, and his judgment, insight, and impulse control were fair—and added that

claimant's problems made it "somewhat difficult" for claimant to do his work, take care of things at home, or get along with other people. (*Id.*, at 96–98).

Other providers' opinions more closely aligned with ARNP Allen-Benitz' treatment notes than her medical source statement and supplemental medical conclusions. DO Michael Sutliff found that claimant had no understanding and memory limitations, and only moderate limitations to his ability to carry out detailed instructions, maintain attention and concentration for extended periods, and complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Doc. 7-3, at 9). Likewise, DO Sutliff found no social interaction limitations and only moderate limitations to claimant's ability to respond appropriately to changes in the work setting. (*Id.*). Katie Behr, CADC, TLMHC stated that claimant "has made significant progress in past months and will continue to titrate out length of sessions." (Doc. 7-30, at 68). Likewise, she stated that claimant "no longer rises to danger to self as he did upon admittance to services." (*Id.*, at 69).

In his written decision, the ALJ wrote that he found ARNP Allen-Bentiz' opinion unpersuasive, as it was not supported by her treatment notes and "the record as a whole, including with other findings of record that [claimant] was oriented to time, place, and person, and he had normal mood and memory." (Doc. 7-2, at 23).

In reviewing this issue de novo, the Court concludes that the ALJ properly reviewed ARNP Allen-Benitz's opinion for supportability. The Court rejects claimant's attempt at requiring this Court to give different weight to the evidence than the ALJ did. *See Cropper v. Dudek*, 136 F.4th 809, 814 (8th Cir. 2025) ("We agree with the Commissioner that this argument is fundamentally inconsistent with our statutorily mandated substantial evidence standard of review -- it invites us to reweigh the evidence of record regarding the supportability and consistency factors, rather than uphold the

ALJ's finding that the medical opinions are not persuasive unless that finding 'falls outside the available zone of choice.'"). Rather, the Court finds that the ALJ compared ARNP Allen-Bentiz' opinion with the other medical evidence in the record and determined whether it was supported by that evidence, as he is required to. Claimant's issue really is that the ALJ credited testimony that supported a finding that claimant was not disabled and discredited testimony that was internally inconsistent and contradicted by the record, although pointing towards disability. Because the ALJ considered the factors that he was required to in reaching his conclusion, that the ALJ found against claimant does not demonstrate improper consideration. *See Austin*, 52 F.4th at 729 (finding that an ALJ that considered consistency and supportability but ultimately found a medical provider's opinion unpersuasive did not err because the ALJ analyzed the required factors). Thus, the Court overrules claimant's objection as to this first issue.

***B. The ALJ Finding Claimant Not Credible***

In determining whether to accept a claimant's subjective complaints, an ALJ must consider "the claimant's prior work history; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination." *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010).

At the hearing before the ALJ, claimant testified that he was working as a cashier at Fleet Farm part-time. (Doc. 7-2, at 38). He stated that he would be unable to work more hours a week because he has "a lot of fear and anxiety about leaving [his] apartment." (*Id.*, at 39). He stated that he leaves his apartment to go grocery shopping and to therapy, but that it is uncomfortable for him to do so. (*Id.*, at 46). He identified having thoughts of hurting himself "[p]robably a couple times a month, I suppose." (*Id.*,

at 50). He also testified that he has pain in his back and in his left knee, specifically following a knee replacement, but that sitting would alleviate some of that pain. (*Id.*, at 53–55). Claimant rated the pain at an eight out of ten on a bad day, and a six out of ten on a good day. (*Id.*). He identified pain reaching above his head with his right hand as well. (*Id.*, at 55–56).

In his written decision, the ALJ stated, "[b]ased on the entire record, including the testimony of the claimant, the undersigned concludes that the evidence fails to support the claimant s assertions of total disability." (Doc. 7-2, at 24). More specifically, the ALJ stated, "[t]reatment notes in the record do not sustain the claimant's allegations of disabling pain and limitations." (*Id.*). Overall, he found, "claimant retains the capacity to function adequately to perform many basic activities associated with work." (*Id.*).

The Court finds, on its de novo review, that the ALJ provided good reasons for weighing claimant's subjective complaints in the manner he did. The ALJ detailed that claimant's statements on what he was capable of doing physically did not support a finding of total disability as even claimant agreed that he was working at the time of the hearing and sitting would alleviate some of his pain in his back and knee. When explaining why working additional hours would be challenging, claimant pointed to his mental limitations, not his ability to stand for more than part-time hours. Claimant also testified that he was able to handle basic tasks and attend his therapy sessions weekly. Thus, it was not that the ALJ found claimant's subjective complaints incredible, but instead found them simply not severe enough to amount to a finding of total disability. The ALJ, in reaching his conclusion denying DIB, did not conduct an improper analysis, but simply reached a conclusion that claimant disagrees with. It does not matter whether another ALJ could reach a different conclusion; rather, the question here is whether substantial evidence supported this ALJ's decision. It did.

Thus, the Court overrules claimant's objection on this second issue as well, and adopts Chief Judge Mahoney's R&R without modification.

## *VI. CONCLUSION*

For these reasons:

1. Claimant's objection, (Doc. 16), to the R&R, (Doc. 15), is **overruled**.
2. The Court **accepts** the R&R, (Doc. 15), without modification. *See* 28 U.S.C. § 636(b)(1).
3. Following Chief Judge Mahoney's recommendation:
   a. The ALJ's decision denying claimant's application for DIB is **affirmed**;
   b. Judgment will enter against claimant and in favor of the Commissioner.

**IT IS SO ORDERED** this 22nd day of September, 2026.

C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa